UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

CODY M.,[1]                                    )
                                              )
                    *Plaintiff,*               )
                                              )
              *v.*                             )          No. 1:23-cv-366-MG-JRS
                                              )
MARTIN O'MALLEY,[2] Commissioner of the Social )
Security Administration,                       )
                                              )
                    *Defendant.*               )

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

In May 2020, Plaintiff Cody M. applied for Title XVI Supplemental Security Income ("SSI") from the Social Security Administration ("SSA"), alleging a disability onset date of January 1, 2007. [Filing No. 10-5 at 2.] His application was initially denied on October 7, 2020, [Filing No. 10-3 at 69-82], and upon reconsideration on June 25, 2021, [Filing No. 10-4 at 83-94]. Administrative Law Judge Daniel Mages (the "ALJ") conducted a telephonic hearing on August 29, 2022. [Filing No. 10-2 at 37-60.] The ALJ issued a decision on October 3, 2022, concluding that Cody M. was not entitled to receive benefits. [Filing No. 10-2 at 11-24.] The Appeals Council denied review on January 27, 2023. [Filing No. 10-2 at 1-4.] On March 1, 2023, Cody M. filed this

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.]

The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. [Filing No. 9.] For the following reasons, the Court **AFFIRMS** the decision of the ALJ denying Cody M. benefits.

**I.**
**STANDARD OF REVIEW[3]**

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id*. For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers*

---

[3] The regulations governing disability determinations for benefits under Title II and Title XVI are identical in virtually all relevant respects unless otherwise noted.

*v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built

an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975

F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled.

*Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ

must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a
> severe impairment; (3) whether the claimant's impairment meets or equals one of
> the impairments listed by the [Commissioner]; (4) whether the claimant can
> perform His past work; and (5) whether the claimant is capable of performing work
> in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations

omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled.

If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step

four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing

work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After step three, but before step four, the ALJ must determine a claimant's residual

functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable

impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009).

In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses

the RFC at step four to determine whether the claimant can perform His own past relevant work

and if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. §

404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for steps one through four; only at

step five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Cody M. was 14 years old on January 1, 2007—the date of his alleged onset of disability. [Filing No. 10-3 at 69, 84.] Cody M. has completed high school through the 12th grade, received a GED, and has no past work experience. [Filing No. 10-2 at 77, 93.] Cody M.'s application alleges that he can no longer work because he has hearing loss, deafness-no inner ear bones, deformed leg bones, asthma, allergies, sleep apnea, learning disability, depression, anxiety, and multiple surgeries with bilateral hearing loss. [Filing No. 10-3 at 70, 84.] Following the August 2022 hearing, the ALJ followed the five-step sequential evaluation set forth in 20 C.F.R. § 416.920(a)(4) and concluded that Cody M. was not disabled. [Filing No. 10-2 at 37-60.] Specifically, the ALJ found as follows:

- At Step One, Cody M. has not engaged in substantial gainful activity[4] since May 28, 2020 (the application date). [Filing No. 10-2 at 13.]

---

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

- At Step Two, Cody M. "has the following severe impairments: congenital hip dysplasia; bilateral eustachian tube dysfunction with vertigo; bilateral tympanic membrane perforations; bilateral otomastoiditis and cholesterol granulomas; a bilateral moderate to severe hearing loss; tinnitus; asthma; chronic sinusitis; obesity; headaches; insomnia; a major depressive disorder; and a generalized anxiety disorder." [Filing No. 10-2 at 13.]

- At Step Three, Cody M. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 10-2 at 14.] The ALJ specifically considered Listings 1.18, 2.07, 2.10, 3.03, 1.00Q, 3.00O, 4.00I2, 9.00, and 11.02. [Filing No. 10-2 at 14-15.] As to the "paragraph B" criteria for Listings 12.04 and 12.06, the ALJ found that Cody M. had "moderate" limitations in two areas: (1) interacting with others, (2) concentrating, persisting, or maintaining pace ("CPP"); and "mild" limitations in two areas: (1) understanding, remembering, or applying information and (2) adapting or managing oneself. [Filing No. 10-2 at 16.]

- After Step Three but before Step Four, Cody M. had the RFC "to perform range of sedentary work (20 CFR 416.967(a)) defined as follows: sitting six hours during an eight-hour workday; standing and walking two hours during an eight-hour workday; lifting, carrying, pushing, and pulling twenty pounds occasionally and ten pounds frequently; occasionally climbing ramps and stairs, stopping, kneeling, and crouching; no crawling; no climbing ladders, ropes, or scaffolds; no work around dangerous moving machinery or at unprotected heights; can balance to maintain body equilibrium to prevent falling when sitting, standing, walking, and climbing ramps and stairs; no more than a moderate noise level as defined in the Selected Characteristics of Occupations; no exposure to extreme heat or extreme cold; occasional exposure to humidity, as well as to atmospheric conditions as defined in the Selected Characteristics of Occupations; can understand, remember, and carry out simple instructions; can use judgment to make simple work-related decisions; occasional interaction with the public, coworkers, and supervisors; and can deal with changes in a routine work setting." [Filing No. 10-2 at 17.]

- At Step Four, the ALJ found Cody M. has no past relevant work. [Filing No. 10-2 at 22.]

- At Step Five, the ALJ, in considering Cody M.'s age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy he can perform, including final assembler, small parts sorter, and laminator. [Filing No. 10-2 at 22-23.]

## III.
### DISCUSSION

Cody M. brings two arguments on appeal: (1) the ALJ erred in evaluating the evidence and testimony concerning his auditory limitations, and (2) the ALJ erred in evaluating the completeness of the record concerning his auditory limitations. [Filing No. 15 at 1.] Cody M.'s arguments stem from the same record opinions and evidence, evaluated by the ALJ between Steps Three and Five.

### A. Noise Level Limitation

Cody M. argues that the ALJ failed to explain why he included no more than a moderate noise level limitation, as opposed to a more restrictive limitation. [Filing No. 15 at 8.] Cody M. contends there is no opinion of record supporting the auditory limitation that the ALJ found, and the SSA's audiologist offered a conclusion that Cody M. had moderate to severe conductive hearing loss ("CHL"). [Filing No. 15 at 9.] He argues that the ALJ failed to explain how the audiologist's conclusion was consistent with a limitation to no more than moderate noise, and such error is relevant as two of the three occupations required a "loud" noise level according to the DOT. [Filing No. 15 at 9.] Moreover, Cody M. argues that his testimony "showed repeated ear surgeries, […] 'moderate to severe' CHL, […] a lack of noise-intensive activity" and that "he had issues with background noise and his additional background noise of ringing in the ears." [Filing No. 15 at 9.] Cody M. says that the ALJ condemned many of his subjective statements (including mental health, gait, balance, asthma, headaches, and medications) but omitted any reference to his auditory limitations. [Filing No. 15 at 9.] Lastly, Cody M. contends that he ALJ did not cite to any activities that might support lesser auditory limitations, let alone moderate. [Filing No. 15 at 10.]

In response, the Commissioner says that the ALJ reasonably accommodated Cody M.'s hearing impairments by limiting him to work involving moderate noise and recognized his

problems of moderate to severe CHL on examination. [Filing No. 17 at 3.] Regarding the moderate-to-severe CHL finding, the Commissioner contends the ALJ took this into consideration alongside Cody M.'s ear surgeries, finding tinnitus a severe impairment, and noting his hearing aid use. [Filing No. 17 at 5.] The Commissioner says the ALJ contrasted these auditory problems with Cody M.'s speech discrimination upon examination of ninety-two percent in the right ear and ninety-six percent in the left. [Filing No. 17 at 3.] Further, the Commissioner argues that the ALJ appropriately found Cody M.'s hearing limitations were overstated as compared to the record and medical evidence but did not discount them entirely. The Commissioner argues that the ALJ also considered the opinions of reviewing physicians who concluded that Cody M. had no workplace-noise limitations but found that the record warranted an RFC featuring a moderate-noise restriction. [Filing No. 17 at 3-4.] Moreover, the Commissioner contends that none of Cody M.'s arguments present more restrictive limitations than those assessed by the ALJ and presents no medical opinion or line of evidence that he had any noise limitations. [Filing No. 17 at 4-5.]

In reply, Cody M. says the ALJ's decision to limit him to moderate noise restriction was arbitrary, as the medical opinions the ALJ found inappropriate opined no limitations and the September 2020 audiology examination revealed a moderate-to-severe CHL finding. [Filing No. 18 at 1.] He says that the ALJ should have known an opinion on his hearing abilities and limitations was necessary but did not solicit one, in error. [Filing No. 18 at 2.] Cody M. further argues that Dr. Small and Sands' opinions merely mention the name of the testing center of the audiology report but say nothing about CHL existing or the assessment itself. [Filing No. 18 at 2.]

The RFC represents "the maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008). *See* 20 C.F.R. § 404.1545(a)(1). "The RFC assessment must ... identify the individual's functional limitations or

restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p, Fed. Reg. 34474-01 (July 2, 1996). The Court's "role is to determine whether the ALJ applied the right standards and produced a decision supported by substantial evidence." *Jeske v. Saul*, 955 F.3d 583, 595-96 (7th Cir. 2020). "The ALJ is not required to address every piece of evidence or testimony presented but must provide a 'logical bridge' between the evidence and the conclusions so that [the Court] can assess the validity of the agency's ultimate findings." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). Further, "the determination of a claimant's RFC is a matter for the ALJ alone—not a treating or examining doctor—to decide." *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014).

Ultimately, the ALJ concluded Cody M. has the RFC to perform sedentary work, with no more than a moderate noise level as defined in the *Selected Characteristics of Occupations*.[5] [Filing No. 10 at 17.] The ALJ did not explicitly describe how the audiology examination findings or other evidence in the record translated to the DOT noise level that he ultimately concluded was appropriate. However, the Court reiterates that an ALJ's decision is read holistically and finds no issue with the ALJ's reasoning as outlined below. *See Zellweger v. Saul*, 984 F.3d 1251, 1252 (7th Cir. 2021).

At the hearing, Cody M. continued reporting difficulty hearing. He stated that it is hard to hear when there is background noise and endorsed a constant ringing in his ears. [Filing No. 10-2 at 45.] In reviewing the record relating to Cody M.'s hearing capabilities, the ALJ noted that he endorsed disability due to hearing loss, deafness, and multiple surgeries with bilateral hearing loss.

---

[5] The *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCO") is a publication of the U.S. Department of Labor, which acts as a companion to the Dictionary of Occupational Titles ("DOT") and is relied upon by the SSA. *Stiles v. Berryhill*, 242 F. Supp. 3d 773, 779 n.4 (S.D. Ind. 2017); SSR 00-4p. Appendix D of the SCO provides five noise levels (very quiet, quiet, moderate, loud, and very loud).

[Filing No. 10-2 at 17.] The ALJ then noted that Cody M. occasionally wears hearing aids, but these hearing aids contribute to the frequent ear infections he experiences. [Filing No. 10-2 at 18.] The ALJ discussed various medical examinations and procedures, specifically noting the following: (1) a consultative examination in September 2020 with Dr. Mohammed Majid, M.D., where Cody M. reported difficulty hearing and Dr. Majid confirmed this difficulty, but did not offer a function-by-function assessment of work-related activities; (2) a consultative audiological examination in September 2020 with Hilary Eppert, MA-CCCA, which showed results consistent with moderate to severe conductive hearing loss bilaterally, with speech discrimination of 92 percent in the right ear, and 96 percent on the left, both at 85 decibels; (3) a primary care visit in February 2021 where Cody M. reported occasional ear pain and draining; (4) a March 2021 primary care follow-up where Cody M. reported intermittent bilateral ear drainage and examination findings describing scarred tympanic membranes and a growth within the opening of the left ear canal; (5) a September 2021 right mastoid cavity debridement; and (6) an April 2022 right transcranial revision mastoidectomy resulting in complete mastoidectomy. [Filing No. 10-2 at 18-21.]

After reviewing the record, the ALJ found the opinions of the consultative physicians and psychologists from prior applications were unpersuasive, as they were unsupported by the objective evidence. [Filing No. 10-2 at 22.] The ALJ similarly found that the treating source opinions predating the amended alleged onset date to be unpersuasive. [Filing No. 10-2 at 22.] Lastly, the ALJ found the state agency medical and psychological consultant opinions to be

partially persuasive, though the opinions were not entirely consistent with the record, which support greater exertional and non-exertional limitations. [Filing No. 10-2 at 22.]

There is also no opinion evidence that suggests any hearing limitation that would require a quiet environment. While the SSA's audiologist found moderate-to-severe CHL, this opinion did not provide any environmental or hearing limitations. Further, while the state agency reviewing physicians assessed a severe hearing impairment, they did not dictate any environmental or hearing limitations. It appears to the Court the ALJ decided on a moderate noise level restriction by grappling with Cody M.'s allegations of difficulty hearing, difficulties with background noise, his multiple surgeries, and the moderate-to-severe conductive hearing loss finding, alongside the medical opinions. Further, while the ALJ found Cody M's alleged symptoms overstated, he did require some noise level limitations in the RFC. Ultimately, "the determination of a claimant's RFC is a matter for the ALJ alone—not a treating or examining doctor—to decide." *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014). Here, the Court finds that the ALJ's RFC assessment of no more than a moderate noise level is supported by substantial evidence.

### B.  Submitting Audiologist Findings to Expert

Cody M. next argues that the September 2020 CHL finding should have been submitted for expert scrutiny. [Filing No. 15 at 12.] The Commissioner points out that both Drs. Small and Sands considered this report in making their determination that Cody M. had no noise limitations. [Filing No. 17 at 7 (citing Filing No. 10-3 at 71, 79).] At the initial and reconsideration level, respectively, Drs. Small and Sands noted the consultative examiner's report from September 2020 in their evidence utilized in review. [Filing No. 10-3 at 71, 86.] While the examiners did not explicitly note the audiologists' findings in their summary or opinion, the Court does not find this

clear error because the report was among the evidence considered and weighed by Drs. Small and

Sands.

### C.  Job Availability

Next, Cody M. says that the ALJ's error in only limiting him to a moderate noise level is

relevant as two of the three occupations the VE found available required a loud noise level, leaving

only a single option requiring a moderate noise level. [Filing No. 15 at 9.] He further rebuts the

speech discrimination percentages, stating the testing was not performed in a moderate noise

environment, so this evidence is insufficient for the ALJ to support the RFC analysis. [Filing No.

18 at 2.] The Commissioner argues that while two jobs of which the ALJ found Cody M. capable

require the ability to handle "loud" environment, the ALJ met his burden to show the existence of

a job significant in number that Cody M. could perform.[6] [Filing No. 17 at 7-8.]

Cody M. correctly notes that two of the jobs the VE found available to him require a loud

noise environment, but the Court does not find fault with the ALJ's reliance on the VE's ultimate

job findings. While only one occupation would be left that only requires a moderate noise level

limitation, this job was presented to have 104,500 jobs available in the national economy. The ALJ

met his burden to show the existence of a significant number of jobs that Cody M. could perform,

as the Seventh Circuit has held that only 30,000 jobs are significant in this context. *Mitchell v.*

*Kijakazi*, No. 20-2897, 2021 WL 3086194, at *3 (7th Cir. July 22, 2021). The ALJ's decision was

supported by substantial evidence in the form of the medical evidence and the testimony of the

VE. The Court does not reweigh the evidence or substitute its own judgment for that of the ALJ

---

[6] The Final Assembler job was found to have 104,500 available jobs and requires a tolerance of
only moderate noise. [Filing No. 10-2 at 23, 56]

when the ALJ's decision is supported by substantial evidence. *Overman*, 546 F.3d at 462; *Dixon*,

270 F.3d at 1176.

### D. Testing Environment of Audiology Report and Speech Discrimination Percentages

Cody M.'s brings his final argument in his reply, that the speech discrimination percentages

found by the audiologist were not performed in a moderate noise environment, so this evidence is

insufficient for the ALJ to rest their analysis of his RFC. [Filing No. 18 at 2.]

The Court once again finds no support for Cody M.'s claim. The audiologist noted the use

of a Spondees test, conducted without the use of hearing aids, with a speech reception threshold

of 45 decibels in the left and right ear.[7] [Filing No. 10-7 at 95.] The audiologist then noted speech

discrimination percentages at Kevin S.'s most comfortable level of 92 in the right at 85 decibels

and 96 percent in the left at 80 decibels.[8] [Filing No. 10-7 at 95.] The SCO describes the noise

level of moderate as noise that can be found in a business office where typewriters are used,

department store, grocery store, light traffic, and fast-food restaurant at off-hours. Appendix D.

Environmental Conditions, SCODICOT Appendix D, (1993).

Cody M. presents no support for this assertion that the audiologists testing should have

been conducted in a moderate noise environment, rather than a quiet environment and extrapolated

based on the test results. Further, the Court finds the ALJ drew a logical bridge between the

---

[7] 45 decibels is equivalent to an average room noise, or the sound of a fridge humming. *If It Sounds Too Loud, It Is Too Loud*, HEARING HEALTH FOUNDATION, https://hearinghealthfoundation.org/keeplistening/decibels, last visited March 25, 2024, (citing NATIONAL INSTITUTE ON DEAFNESS AND OTHER COMMUNICATION DISORDERS infographic on decibel levels).

[8] 80 decibels is equivalent to inside an airplane or an electric vacuum, and 85 decibels is equivalent to city traffic from inside a car or a noisy restaurant. *If It Sounds Too Loud, It Is Too Loud*, HEARING HEALTH FOUNDATION, https://hearinghealthfoundation.org/keeplistening/decibels, last visited March 25, 2024, (citing NATIONAL INSTITUTE ON DEAFNESS AND OTHER COMMUNICATION DISORDERS infographic on decibel levels).

audiologist's findings, a moderate-to-severe CHL diagnosis, and the ultimate RFC limitation of no more than a moderate noise level. As such, the Court finds no error on this issue.

## IV.
### CONCLUSION

For the reasons detailed above, the Court **AFFIRMS** the ALJ's decision denying Cody M. benefits. Final judgment will issue by separate entry.

Date: 3/28/2024

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record.**